256 P.2d 725

**BEUMLER et al. v. STILLMAN et al.**

No. 5606.

Supreme Court of Arizona.

Decided April 30, 1953.

John M. Williams, of Douglas, for appellants.

Anthony T. Deddens, of Phoenix, for appellees.

PHELPS, Justice.

This is an appeal from a judgment of the superior court of Cochise County in a certain proceeding wherein the court declared null and void certain acts of the appellant board.

The facts are that Herman C. Hartman, Henry A. Kelly and John B. Stillman were paid members of the Douglas Fire Department and became eligible for retirement under the provisions of chapter 16, article 19, A.C.A.1939, as amended by chapter 26, Session Laws of 1941 and chapter 44, Session Laws of 1947.

In 1947 the board of trustees of the firemen's relief and pension fund of the city of Douglas created under the provisions of the above act voted unanimously

to retire Herman C. Hartman and H. A. Kelly, and in 1948 retired John B. Stillman. Under the provisions of the act creating said fund the above-named firemen became entitled to pension benefits equal to one-half of their average wages for the 12 months immediately preceding their retirement. The board of trustees thereupon fixed their pensions in said amounts. Thereafter in April 1949 H. A. Kelly died and at a regular meeting of the board of trustees in accordance with the provisions of said retirement act it unanimously voted a monthly benefit to his widow, Mrs. H. A. Kelly, in the sum of $95.54, the same being equal to two-thirds of the pension theretofore received by H. A. Kelly during his lifetime.

Said beneficiaries continued to receive their pensions in the amounts fixed by the board in accordance with the provisions of the statute until June 1951 when the board in regular meeting assembled, voted to reduce such benefits to 50% of the amount fixed by statute; voted to transfer $1500 of the amount received from the 2% tax on fire insurance premiums in that area to the permanent reserve fund; and to transfer government bonds of the value of $28,000 to said permanent reserve fund. Under the provisions of the law, money derived from fire insurance premiums must be applied to the payment of pensions if required for that purpose. The board at that meeting also authorized the payment of a note and interest in the sum of $456.90 due the bank for money borrowed to refund payroll deductions to a former active paid member of the Douglas fire department who had been separated from the service. The resolution adopted provided that said note should be paid out of the pension fund instead of the permanent reserve fund as required under the law.

Thereafter on July 3, 1951, the said Herman C. Hartman, Mrs. H. A. Kelly and John D. Stillman, appellees herein, petitioned the superior court of Cochise County for a writ of certiorari directed to said board of trustees alleging that such board had exceeded its jurisdiction in all the business matters transacted by it on June 4 as above enumerated and prayed that all records relating thereto be transmitted to the superior court for review.

The writ of certiorari duly issued thereon and return made in accordance with its mandate. After a hearing and an examination of the record certified to it by the board, the court entered its judgment thereon finding, adjudging and decreeing that the board had exceeded its jurisdiction in all the matters above enumerated, and said actions were each and all null and void.

Appellants have presented three assignments of error for our consideration, contending that the court erred in declaring (1) that the transfer of the $1500 from the pension fund to the permanent reserve fund by the board was null and void; (2) that the transfer of the United States government bonds in the sum of $28,000 to the

permanent reserve fund was null and void; and, (3) that the reduction of pensions to appellees by 50% was null and void.

Counsel have devoted much time and space to a discussion of whether a pension is a mere gratuity and subject to repeal by the legislature at any time without obligation to beneficiaries, contingent or otherwise, or whether it is based upon contract and if so, at what time does the beneficiary acquire a vested right and what is the character of the right vested. Does it vest immediately or at the time of retirement and does the vestiture entitle the beneficiary to payment of the amount fixed for the remainder of his life, or does it only arise when an installment becomes due and limited to such installment?

None of these issues are presented in this case. The sole question here is: Did the board of trustees created under the provisions of chapter 16, article 19, as amended, supra, have authority to do the things above enumerated, on June 4, 1951? The answer to this question must be found in the language of the statute itself.

The board of trustees is a creature of the legislature and has only such powers as have been expressly or by necessary implication delegated to it. Let us examine the statute, therefore, to ascertain what powers it has.

Section 16–1901, A.C.A.1939, creates the board and provides that:

" * * * The board of trustees shall provide for the disbursement of the fund and designate the beneficiaries thereof *as in this article directed."* (Emphasis supplied.)

Clearly this language vests no discretion in the board. It merely directs them to carry out the provisions of the act in accordance with the terms thereof. Section 16–1903, A.C.A.1939, provides:

"The board shall meet monthly on the first Monday of each month and at such other times as the president may direct. It shall issue orders signed by the president and the secretary to the beneficiaries of the amounts ordered paid to such beneficiaries from the fund stating the conditions of the payment. It shall keep a public record of its proceedings. At each regular meeting it shall transmit to the city, town or county treasurer, as the case may be, a written list of all persons entitled to benefits from the fund, stating the reason and amount thereof. Such list shall be certified and signed by the president and secretary and attested under oath. The treasurer of such city or town, or in the case of unincorporated towns, the clerk of the board of supervisors, shall thereupon enter a copy of said list upon a book kept therefor. *Said fund shall not be disbursed without a majority vote of the members of said board, such vote to be entered upon the minutes."* (Emphasis supplied.)

354

The above language confers duties rather than powers.

Section 16-1904, A.C.A.1939, as amended, provides that:

"(a) When any person has served as a full time paid member of the same fire department or fire company in this state for twenty (20) years, the last five (5) years of which shall have been consecutive, then if he either is fifty-seven (57) years of age or over, or becomes physically unable for any cause, while a member of the fire department, to perform the duties of the service, he may, *on his application and in the discretion of the board of trustees, be retired on a monthly pension equal to one-half the average monthly salary received by him for the twelve (12) months' period next prior to his retirement, to be paid from the firemen's relief and pension fund for his incorporated city or town or organized fire company.* The pension shall in no event exceed one hundred fifty dollars ($150) per month. (Emphasis supplied.)

"(b) In the event of the death of a person drawing or eligible to a pension under this section, there may be paid to his surviving dependents the following sums:

"1. If he leaves a widow to whom he was married at least one (1) year prior to his retirement, an amount equal to two-thirds of his monthly pension or the monthly pension to which he was eligible, plus an amount not exceeding ten dollars ($10.00) per month per dependent surviving child under eighteen (18) years of age, to the widow until she remarries. * * *"

Section 16-1911, A.C.A.1939, provides:

"* * * (b) The board shall invest such funds as are not immediately required for the payment of pensions or benefits under this article in bonds of the United States government or in bonds of the state of Arizona or a political subdivision thereof. * * *"

Section 16-1912, A.C.A.1939, provides insofar as here material:

"(b) * * * The treasurer of each board shall keep a record of all salary deductions; and should a fireman die under circumstances not entitling his dependents to any benefits from the firemen's relief and pension fund, or should he become separated from the service voluntarily or involuntarily without having become eligible to retirement benefits thereunder, then all deductions theretofore made from his salary under this article shall become payable, without interest, in the event of his death to his beneficiaries, or otherwise to the fireman.

"(c) *All pay-roll deductions made under subsection (b), and in the discretion of the board of trustees such addi-*

*tional sums as it may deem proper, shall be set aside in a permanent reserve fund, and the income from the same, but no part of the principal, shall be used to meet retirement expenses, except that the portion of the principal which accrued from salary deductions may be drawn upon when necessary in order to meet the refunds provided for in subsection (b)."* (Emphasis supplied.)

The above are the only sections of the act pertinent to the issues involved in this case, with the possible exception of section 16–1917, A.C.A.1939, which we will discuss later. It will be observed that in only two instances is the board given authority to exercise discretion. One is in section 16–1904, supra, wherein it is provided that after a paid fireman has served for 20 years and is 57 years of age or becomes physically unable to perform his duties he may

"\* \* \* on his application and in the discretion of the board of trustees, be retired on a monthly pension equal to one-half the average monthly salary received by him for the twelve (12) months' period next prior to his retirement, to be paid from the firemen's relief and pension fund \* \* \*."

The discretion here is limited to whether the board will authorize his retirement. If they exercise the discretion in his favor then he is entitled under the law to one-half the average monthly salary received by him for the preceding 12 months. The language is clear and unambiguous and needs no interpretation.

The only other place where the word "discretion" is used is in section 16–1912, supra, providing that:

"(c) All pay-roll deductions made under subsection (b), and in the discretion of the board of trustees such additional sums as it may deem proper, shall be set aside in a permanent reserve fund, \* \* \*."

There is implied in section 16–1911, supra, a discretion in the board.

Subsection (b) thereof provides that the "\* \* \* board shall invest such funds as are not immediately required for the payment of pensions or benefits under this article in bonds of the United States government or in bonds of the state of Arizona or a political subdivision thereof."

The discretion impliedly given there is that the board may determine whether the funds are immediately required for the payment of pensions. If not it is mandatory upon the board to invest them in bonds as denominated in the statute.

It will be seen from the above quotations that once the board has exercised its discretion in authorizing the retirement of a fireman upon a monthly pension that the amount provided by the statute must be fixed by the board as his monthly pension.

356

The clause providing that in no event shall the pension exceed $150 per month is entirely consistent with the provision that he shall receive a pension equal to one-half his average monthly salary. It places a stop-gap upon the amount of the pension at $150 per month even though the fireman may have received a salary in excess of $300 per month. It is not even suggested that the statute in express language vested the board with power to perform the acts it attempted on June 4, 1951.

We will now consider the provisions of section 16–1917, A.C.A.1939, upon which appellants rely in part to sustain their position that the board has discretionary powers in the matter of fixing the amount allowed beneficiaries under the statute. This section provides:

"Payments to retired members shall not be less than twenty-five dollars ($25.00) monthly and the payment shall be made as determined by the board of trustees. Should the funds provided be insufficient to fully pay the pensions, the fund shall be prorated among those entitled. * * *"

Appellants argue that the portion of section 16–1917, supra, above quoted shows a legislative intent to empower the board with discretion to reduce the pensions of appellees to such amounts as their discretion may dictate with the limitation that no pension shall be less than $25 per month. We cannot agree with this inter-pretation. The law covers not only paid members of fire companies but those who are on part time and those who are members of volunteer fire companies who receive no compensation whatever. Section 16–1905, A.C.A.1939, before it was amended provided for a minimum pension of $25 per month for members of volunteer fire departments and a maximum of $60 per month when retired for mental or physical disability. As amended this section retained the $60 maximum but omitted the $25 minimum. The omission was no doubt due to the fact that it recognized that section 16–1917, supra, had fixed the minimum amount the board could pay at $25 and that its inclusion in the amendment would be mere repetition.

The entire act must be construed together and harmonized if possible. We believe that section 16–1917, supra, in fixing a minimum of $25 to be paid to a retired fireman applies only to members of volunteer fire companies and has no reference to paid members of fire departments. This interpretation reconciles any seeming conflict in the act. It cannot apply to paid members of fire departments for the reason that section 16–1904, as amended, supra, expressly provides that paid members of fire departments may upon becoming eligible for retirement make application therefor and if in the discretion of the board such member is permitted to retire he is entitled to one-half the average monthly wage he received during the 12 months

next prior to his retirement, not to exceed in any event the sum of $150. No discretion is given the board to reduce the amount of such pension fixed therein except under the provisions of section 16–1917, supra, which provides that:

" * * * Should the funds provided be insufficient to fully pay the pensions, the fund shall be prorated among those entitled. * * * "

This language, however, does not empower the board to anticipate future inadequacies of the fund to meet pension requirements and based upon such anticipation, prorate funds presently available which are amply adequate to pay in full all pensions due. The other sections in this chapter have no application to the issues here involved.

We therefore hold that the board was without authority to reduce the pensions of the appellees by 50% for the reason that the certified record shows there was money in the pension fund to take care of current pensions if the $1500 received from fire insurance premiums from the Corporation Commission had not been transferred to the permanent reserve fund. The board was without authority to transfer $1500 from the insurance premium fund to the permanent reserve fund. With the immediate prospect of three other firemen becoming eligible for retirement it was an abuse of discretion for the board to transfer said fund to the permanent reserve fund and it was likewise an abuse of discretion to transfer the government bonds of the value of $28,000 to such fund. We also hold that in paying out of the firemen's relief and pension fund a note to the bank for money borrowed to pay a refund of payroll deductions to a former fireman the board not only abused its discretion but violated the statute which in plain language provides that such payments shall be made out of the permanent reserve fund.

The judgment of the trial court is affirmed.

STANFORD, C. J., and LA PRADE, UDALL and WINDES, JJ., concur.